IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LOWMORREO HARRIS, SR.,

                                      Plaintiff,                         OPINION AND ORDER

     v.

                                                                         14-cv-047-wmc

JEFF JAEGER, *et al.*,

                                   Defendants.

---

     In this civil action, the court granted *pro se* prisoner Lowmorreo Harris, Sr., leave to proceed on his claims that defendants, "Jeff Jaeger, Charles Devendorf, Captain Acterberg, C/O Bender and Captain Baker," retaliated against him in violation of his First Amendment rights, as well as his claims that defendants Jaeger and Baker violated his procedural due process rights at a disciplinary hearing. This opinion and order will address and rule on Harris's varied, currently pending motions.

I.    **Motion for leave to file amended complaint**

     Plaintiff moves for leave to add several claims to this lawsuit. (Dkt. #45.) While courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), it is appropriate for the court to deny leave "where there has been undue delay, dilatory motive on the part of the movant, repeated failure to cure previous deficiencies, and where amendment would be futile." *CogniTest Corp. v. Riverside Publ'g Co.*, 107 F.3d 493, 499 (7th Cir. 1997) (citation omitted).

A.  Actions by Hearing Examiners

Here, plaintiff seeks to add claims against Captain Kannonberg and Joe Thyne, apparently learning through discovery that in Harris's initial disciplinary hearing to address a conduct report for using a false name, two members of the disciplinary committee, Kannonberg and Thyne, "held that plaintiff's name was in fact 'Lowmorreo A. Harris' because of papers given to the committee by Sgt. Koran acting as staff advocate for the accused." (Pl.'s Mtn. for Leave to Amend Compl. (dkt. #45) at 2.) This information, plaintiff claims, should have resulted in a finding that he was not guilty of using a false name.[1] (*Id.*) Plaintiff also purports to have learned through discovery that Thyne in particular, who was also on the disciplinary committee for Harris's hearing to address a second conduct report against him, "was motivated as [a] colleague to assist the retribution imposed on Harris." (*Id.*)

Plaintiff fails to identify in his amended complaint, however, any facts to support a reasonable inference that Kannonberg and Thyne subjected him to discipline despite knowing that it was not warranted nor that Thyne participated in retaliating against him because he complained about staff misconduct. Absent those facts, allowing plaintiff to proceed on his proposed claims against Kannonberg and Thyne would be a futile gesture. Accordingly, the court will deny leave to add either as a defendant.

---

[1] Harris does not specifically identify which document establishes that he was committed to the Wisconsin Department of Corrections ("DOC") under "Lowmorreo Harris," rather than "Mario Harris," nor does he specifically identify any document in which Kannonberg and Thyne's claimed "holding" is found. In his proposed second amended complaint, Harris cites a document that appears to reflect the captions of several of his state civil and criminal cases, as well as a document listing the reasons for the outcome of his first due process hearing, but none of these documents establish under what name he was committed. Indeed, the second document he cites indicates that the disciplinary committee found that "the name on his DOC ID is Mario Harris."

## B. Denial of Adequate Sunlight

In addition to his proposed claims against Kannonberg and Thyne, plaintiff seeks leave to add a claim for cruel and unusual punishment under the Eighth Amendment on the basis that, among other things, his "vitamin D levels dipped below normal levels causing plaintiff to suffer severe bone aches and [risk of fracture]," all as a result of a lack of sunlight while he was held at Wisconsin Secure Program Facility. (*Id.* at 4.) Plaintiff further adds that DOC medical staff said that he "will have to take vitamin supplements for the rest of his life." (Pl.'s Mtn. for Leave to Amend Compl. (dkt. #45) at 4.)

Prison officials violate the constitution when they are "deliberately indifferent to adverse conditions that deny the minimal civilized nature of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Prison conditions severe enough to violate the constitution are varied and are assessed in combination. *See Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013).

Assuming that the conditions plaintiff describes are serious enough to rise to the level of a constitutional violation, he has yet to identify any defendant who could be held personally liable. Regardless, Federal Rule of Civil Procedure 20 permits plaintiffs to join multiple defendants in a lawsuit only if: (1) at least one claim against each defendant arises out of the same transaction or series of transactions; and (2) there is a question of law or fact common to all of the defendants. Fed. R. Civ. P. 20; *see George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Since any claims concerning the alleged conditions at Wisconsin Secure Program Facility appear to be unrelated in law or fact to Harris's

remaining claims against any of the approved defendants in this lawsuit, plaintiff will be denied leave to add his proposed Eighth Amendment claim.

### C. Retaliation

Finally, plaintiff seeks leave to add a claim against Sgt. Perkins arising out of Harris's alleged refusal to accept delivery of already-opened legal mail from Perkins in January of 2012. When Harris asked Perkins what he did with that mail about two hours later, plaintiff alleges that Perkins became upset and "broadcasted" a false assertion that Harris was incarcerated for child molestation. Harris further alleges that after he filed a complaint against Perkins for his behavior, Perkins was interviewed by the complaint examiner and said "something different" than this in his conduct report. (Pl.'s Am. Compl. (dkt. #46) at 9.)

Any claim against Perkins would likewise be futile under Rule 20 because it also appears to be unrelated to any of Harris's remaining claims. In addition, Harris provides no reason to infer that Perkins retaliated against him for any protected activity recognized under the Eighth Amendment. *Farmer*, 511 U.S. at 834. For these reasons, the court will also deny leave to add claims against Perkins.

Given the futility of each of his proposed claims, the court will deny plaintiff leave to amend his complaint.[2]

---

[2] Even if one of his newly-proposed claims has some merit, Harris offers no explanation why he waited until this late stage of litigation to include those allegations.

## II.     Motion to Compel

Plaintiff also moves to compel production of a handful of documents he claims defendants have withheld.  (Dkt. #38.)   Specifically, plaintiff asks the court to compel production of:  (1) a disbursement slip concerning his civil lawsuits against Latino Auto Sales and Nichole Adams; (2) information relating to the receipt of his "judgment of conviction and sentencing transcripts" by staff at the New Lisbon Correctional Institution; (3) an envelope for a letter he sent to the "Consumer Protection Agency; and (4) the names of individuals who worked in the business office of the Dodge Correctional Institution ("DCI").  In response to plaintiff's motion, defendants represented that the corrections program supervisor could not find the disbursement slip or envelope plaintiff requests despite a diligent search.   Defendants also assert that the names of the individuals who worked at Dodge are irrelevant to this lawsuit.

In reply, plaintiff does not address defendants' contention that the names of the individuals at DCI are irrelevant.  Accordingly, defendants will not be compelled to produce those names.  With respect to the other documents, plaintiff suggests that the disbursement slip and envelope would support his allegations that the defendants interfered with his mail and legal papers, but he does not explain why beyond that general assertion.  Regardless, the court cannot compel defendants to produce documents they claim not to have, especially when accompanied by a supporting sworn declaration from that party's document custodian, even though plaintiff maintains that they *once*

5

existed, at least absent contemporaneous evidence that it does exist. Accordingly, plaintiff's motion must be denied.[3]

### III. Preliminary Injunction

Next, plaintiff moves for a "temporary restraining order and a preliminary injunction to ensure that he receive adequate[] funding without further retaliatory acts." ((Dkt. #47); Br. in Supp. (dkt. #48) at 1.) In his brief in support of this motion, however, plaintiff does not explain what specific injunctive relief he seeks. From the declaration and proposed order plaintiff submits in support of his motion, it would appear that he faults the business office's denial of an extension for his legal loan for this case. (Decl. of Lowmorreo A. Harris, Sr. Ex. 2 (dkt. #50-2).) Moreover, in response to plaintiff's motion, defendants confirm that the business office of the Green Bay Correctional Institution, where Harris is currently incarcerated, approved his legal loan extension until June 15, 2016, or until his legal loan balance reaches $20.00. (Decl. of Terrie DeBruin (dkt. #58) ¶ 4.)

Given defendants' response, the court will deny plaintiff's motion without prejudice to renewal if necessary. At the same time, defendants and Green Bay Correctional Institution are encouraged to resolve any differences regarding Harris's participation in this lawsuit amicably, in an effort to eliminate the need for such a motion.

---

[3] At this stage of the lawsuit, the court need not and does not rule on the possible admissibility of the *absence* of this discovery itself.

IV.     Motions for Assistance in Recruiting Counsel

Plaintiff has also filed several motions for assistance in recruiting volunteer counsel (dkt. ##29, 44, 74), which the court addresses collectively.  As an initial matter, there is some question whether Harris has satisfied his obligation to make reasonable efforts to find a lawyer on his own or show that he was prevented from making such efforts.  *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). Ordinarily, the court would expect Harris to have submitted copies of letters from at least three lawyers turning down his request to represent him in this case.  Here, Harris attached:  a letter requesting assistance from the Wisconsin State Public Defender; a denial letter from a Milwaukee law firm; a letter he drafted to request representation from a Madison law firm; and a memorandum denying his request to continue his legal loan.  (Dkt. #32.)  At minimum, plaintiff should send his third letter before seeking representation again.

Even if these efforts sufficed, however, plaintiff must also show that the legal and factual difficulty of this case exceeds his ability to litigate it.  *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007).  Plaintiff's remaining retaliation and due process claims are relatively straightforward and are based on a largely contained set of facts within Harris's personal knowledge.  Thus, despite his claims to the contrary, it does not appear that this case requires extensive development of the facts through discovery.  The court acknowledges Harris's claims that health issues, including a condition known as sarcoidosis, impair his memory and cause pain as well as other symptoms, which would understandably make it more difficult for him to litigate this case, but at the same time,

7

plaintiff has participated extensively to this point, filing numerous motions as reflected in this opinion, and he has shown adequate command of the legal issues he must address to prevail on his claims.

With respect to Harris's complaints about access to the law library, his legal loan and his ability to correspond with defendants' counsel, he must be aware that these are challenges nearly all pro se litigants face, and this court receives many more requests for counsel than the small pool of available volunteers can accommodate. Thus, only those cases presenting exceptional circumstances can reasonably be considered for court assistance in recruiting volunteer counsel. For the reasons described above, Harris's case does not appear to fall into this category. Accordingly, plaintiff's motions for assistance in recruiting counsel will be denied at this time, but the court will revisit them *sua sponte* in the event that his claims survive summary judgment and he supplements the showing of his own efforts to recruit counsel.

V.  **Motion for Recusal**

Finally, plaintiff moves for my recusal. (Dkt. #78.) Under 28 U.S.C. § 455, recusal is necessary in a number of circumstances, including when a judge's impartiality might reasonably be questioned or when he or she has a personal bias or prejudice concerning a party. Plaintiff identifies no valid reasons for recusal in his motion, nor does anything lead the court to believe that its impartiality can reasonably be questioned. The motion for recusal is, therefore, denied.

ORDER

IT IS ORDERED that:

1) plaintiff's motion for leave to file an amended complaint (dkt. #45, 46) is DENIED;

2) plaintiff's motion to compel (dkt. #38) is DENIED;

3) plaintiff's motion for a preliminary injunction (dkt. #47) is DENIED;

4) plaintiff's motions for assistance in recruiting counsel (dkt. ##29, 44, 74) are DENIED;

5) plaintiff's motion for recusal (dkt. #78) is DENIED;

6) plaintiff's motion for the court to liberally construe his pleadings (dkt. #81) is DENIED as moot, since the court must do so for all *pro se* litigants;

7) plaintiff's motions for extension of time (dkt. ##52, 80, 82) and motion to expedite (dkt. #70) are DENIED as moot, since the court has considered plaintiff's brief in response to defendants' motion for summary judgment and cross-motion for summary judgment to be timely filed (dkt. #96).

Entered this 28th day of September, 2016.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge